IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-01361-PAB-KLM

WILDWOOD TOWNHOME HOMEOWNERS ASSOCIATION,

      Plaintiff,

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

      Defendant.

---

## ORDER

---

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment [Docket No. 39] and Travelers' Motion for Summary Judgment on Plaintiff's Complaint and Travelers' Counterclaim for Declaratory Judgment [Docket No. 41]. Defendant responded to plaintiff Wildwood Townhome Homeowners Association's (the "Association") motion, Docket No. 42, to which plaintiff replied. Docket No. 45. Plaintiff responded to defendant's motion, Docket No. 48, to which defendant replied. Docket No. 53. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. This case arises out of hailstorm damage at a property in Fort Collins, Colorado. The Association submitted a claim to defendant, which is its insurer. While defendant paid a portion of the Association's claim, the parties dispute defendant's coverage obligations for other damaged property, including certain windows, doors, and air conditioners.

## I. BACKGROUND[1]

The Association operates a residential "planned community" known as "Wildwood Townhomes P.U.D." (the "property").  Docket No. 39 at 3, ¶ 1.  A "planned community" is defined by the Colorado Common Interest Ownership Act (the "CCIOA") as a "common interest community that is not a condominium or cooperative."  Docket No. 41 at 4, ¶ 4 (citing Colo. Rev. Stat. § 38-33.3-103(22)).  The property consists of "several pods of 2-story townhomes, which are separated by vertical boundaries, or party walls." *Id.*, ¶ 7.  The Amended and Restated Declaration of Covenants, Conditions and Restrictions of Wildwood Townhomes P.U.D. (the "Declaration") does not contain the term "horizontal boundary."  *Id.* at 5, ¶ 10.

The Association insured the property with an insurance policy that defendant issued.  Docket No. 39 at 3, ¶ 3.  The policy specifies the following coverage and exclusions based on the property as described in the Declaration:

> **A.  COVERAGE**
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.
>
> > **1.  Covered Property**
> > Covered Property, as used in this Coverage Form, means the type of property described in this Paragraph A.1, and limited in Paragraph A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.
> >
> > > a.  **Building**, meaning the building or structure described in the Declarations, including:
> > >
> > > > (1) Completed additions;

---

[1] The following facts are undisputed unless otherwise noted.

> (2) Fences;
> (3) Fixtures, outside of individual units,
> including outdoor fixtures;
> (4) Retaining walls, whether or not attached;
> (5) Permanently attached:
>> (a) Machinery; and
>> (b) Equipment

*Id.* at 3–5, ¶ 4 (quoting Docket No. 39-2 at 52).  The policy also states,

## BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM

> Various provisions in this policy restrict coverage.  Read the entire policy
> carefully to determine rights, duties[,] and what is and is not covered.
>
> . . .
> **4. Loss Payment – Building and Personal Property**
>
> We will not pay [the insured] more than [the insured's] financial interest in
> the Covered Property.

Docket No. 41 at 5, ¶¶ 12–13 (quoting Docket No. 39-1 at 13, 40).[2]  The policy does not

specifically exclude coverage for windows, window screens, entry doors, sliding doors,

garage doors, or air conditioning condensers.  Docket No. 39 at 5, ¶ 5.

The Association is not an "owner" and does not own any of the "lots" or "units" as

defined by the Declaration.  Docket No. 41 at 4, ¶¶ 5–6.[3]  The Declaration specifies

---

[2] The Association admits that the policy contains language that certain provisions restrict coverage; however, the Association argues in its response to this statement of fact that the cited language is not applicable.  Docket No. 48 at 3–4, ¶ 12.  The Court's practice standards, however, state that "**[l]egal** argument is not permitted [in the fact section] and should be reserved for separate portions of the briefs.  If, for example, a party believes that an established fact is immaterial that belief should be expressed in the part of the brief devoted to legal argument, and the fact should be admitted." Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vii.  The Court, therefore, deems this fact admitted.

[3] The Association purports to dispute these facts.  Docket No. 48 at 2–3, ¶¶ 5–6. It insists that it "has the responsibility to ensure, guarantee, or otherwise safeguard all Wildwood units and property from falling into an unsafe condition and disrepair" and "may, in its sole discretion, assume the obligation for maintenance or repair of additional

3

components of the property that the Association must maintain and insure as well as those that owners must maintain and insure. *Id.*, ¶ 8.[4]  In relevant part, the Declaration states that it is the owners' responsibility to maintain and insure widow screens, window glass and frame, garage doors, exterior unit doors, balcony/patio sliding glass doors, and air conditioners, including condensers and lines running to and from such equipment. *Id.* at 4–5, ¶ 9.[5]  The Declaration also states that, if an owner fails to comply with his or her maintenance and repair obligations, the Association "may perform" those obligations and assess the costs against the owner's units through a lien. Docket No. 48 at 6, ¶ 5.

On July 6, 2019, a wind and hail storm damaged building components throughout the property, including windows, screens, doors, garage doors, and air conditioning

---

property . . . within or outside" the property, "even if the obligation currently lies with [o]wners or other entities." *Id.*; *see also* Docket No. 39-1 at 12.  The Association does not dispute, however, that it is not itself an owner of any lot or unit.  The Court, therefore, deems this fact admitted.

[4] The Association states that "[i]t is the [p]olicy of insurance . . . which covers all 'Building Materials' in this lawsuit including the [p]roperty [c]omponents."  Docket No. 48 at 3, ¶ 8.  The Association cites to the "Amendatory Provisions Condominium Association Coverage," Docket No. 48-3 at 52; however, the fact that the policy may cover "building materials" does not contradict the Declaration's distinction between components that owners must insure and components that the Association must insure. Moreover, the term "building materials" does not appear at the cite the Association references.  The Court, therefore, deems this fact admitted.

[5] The Association again states that "[i]t is the [p]olicy of insurance . . . which covers all 'Building Materials' in this lawsuit including the [p]roperty [c]omponents" and cites to the "Amendatory Provisions Condominium Association Coverage."  Docket No. 48 at 3, ¶ 9 (citing Docket No. 48-3 at 52).  However, the Association's response does not dispute the Declaration, and the Association's denial is unsupported because there is no mention of "building materials" in the portion of the policy that the Association cites.  The Court, therefore, deems this fact admitted.

condensers.  Docket No. 39 at 4, ¶ 6.  The Association submitted a claim to defendant.

*Id.*, ¶ 7.  After application of the policy's 5% wind and hail deductible, defendant paid

$385,954.21 to the Association "for damage to common elements of the [property] and

elements delineated in Exhibit B of the [Declaration] as being the responsibility of [the

Association] to repair, maintain[,] and insure."  Docket No. 41 at 6, ¶ 16.  Defendant did

not pay the entire claim, including the claims for windows, screens, doors, garage

doors, and air conditioning condensers.  Docket No. 39 at 4, ¶ 8.[6]

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A disputed fact is "material" if,

under the relevant substantive law, it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict

for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial,

it may satisfy its burden at the summary judgment stage by identifying a lack of

---

[6] Defendant admits that it did not pay all of the Association's claim.  Docket No. 42 at 5–6, ¶ 8.  The parties dispute, however, whether defendant was obligated to pay the portion of the claim that it denied as well as defendant's reason for denying the Association's claim.  *See* Docket No. 39 at 5–6, ¶ 9; Docket No. 42 at 6–7, ¶ 9.

evidence for the nonmovant on an essential element of the nonmovant's claim."

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations

omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving

party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of

Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The

nonmoving party may not rest solely on the allegations in the pleadings, but instead

must designate "specific facts showing that there is a genuine issue for trial."  *Celotex

Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary

judgment, the nonmovant must establish, at a minimum, an inference of the presence of

each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a

motion for summary judgment, a court must view the evidence in the light most

favorable to the non-moving party.  *Id.* [7]

## III.  ANALYSIS[8]

In its complaint, the Association brings claims for (1) declaratory judgment, (2)

breach of the insurance contract, (3) breach of the covenant of good faith and fair

dealing, (4) statutory bad faith, and (5) unfair and deceptive trade practices.  Docket No.

1 at 6–10, ¶¶ 34–63.  Defendant counterclaims for declaratory judgment that the

---

[7] Discovery had not begun when the parties filed their motions for summary judgment, *see* Docket No. 39 at 2; Docket No. 41 at 3, but neither party asks for discovery under Federal Rule of Civil Procedure 56(d).

[8] Because jurisdiction is based on diversity, the Court applies Colorado law in resolving the motion.  *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) ("In a case in which jurisdiction is founded on diversity, we apply the law of the forum state.").  The parties also assume that Colorado law applies.  *See generally* Docket Nos. 39, 41, 42, 45, 48, 53.

Association had no financial interest in the windows, window screens, garage doors, and air conditioner condenser units, damage to which the policy does not cover.  *See* Docket No. 15 at 19–25, ¶¶ 1–30.  Defendant refers to the property that it did not cover as the "disputed property."  *See generally id.*  It argues that it is entitled to summary judgment on its declaratory judgment claim and against the Association on all of the Association's claims because it paid the Association for all covered damage to the property that the Association has a financial interest in and defendant had no obligation to pay the Association's claim for the windows, screens, doors, garage doors, and air conditioning condensers that owners must maintain and insure and in which the Association has no insurable interest.  Docket No. 41 at 1–2.

The Association seeks summary judgment on its declaratory judgment and breach-of-contract claims "because the plain and unambiguous language of the [p]olicy covers all of the damaged building components at issue in this lawsuit."  Docket No. 39 at 7.  The question of whether the Association has an insurable interest in the disputed property is dispositive of both parties' motions because, if the Association does not have an insurable interest in the disputed property, the policy does not cover damage to the disputed property, defendant had no obligation to pay that portion of the Association's claim, did not breach the insurance contract, and did not act in bad faith.

Defendant's motion focuses on plaintiff's breach-of-contract claim, *see generally* Docket No. 41, which is where the Court begins its analysis.

### A.  The Association's Breach-of-Contract Claim

In Colorado, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted).

The interpretation of an insurance policy is a legal question. *Pac. Specialty Ins. Co. v. Poirier*, 408 F. Supp. 3d 1241, 1246 (D. Colo. 2019) (citing *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002)). An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990). Clauses or phrases should not be viewed in isolation; rather, a policy's meaning must be determined by examining the entire instrument. *Huizar*, 52 P.3d at 819. Policy provisions that are clear and unambiguous should be enforced as written. *Chacon*, 788 P.2d at 750. Where a term in an insurance policy is ambiguous, meaning it is susceptible to more than one reasonable interpretation, the Court will construe the term against the drafter and in favor of providing coverage to the insured. *Sachs v. Am. Family Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010).

Defendant asserts that it is entitled to summary judgment on the Association's breach-of-contract claim because the Association does not have an insurable interest in the disputed property and, therefore, defendant had no obligation to pay the Association's claim for damage to the disputed property. *See generally* Docket No. 41.

This argument has two parts.  First, as a matter of contract law, defendant argues that

the policy only requires defendant to pay the policyholder's insurable and financial

interest as set forth in the Declaration, which defines the legal relationship between the

owners and the Association.[9]  *Id.* at 7–9, 12–14.  Second, defendant argues that

application of Colorado law renders the same result.  *Id.* at 9–12.  The Association

disagrees, arguing that it has an insurable interest and, as a result, the policy covers the

disputed property, which policy defendant breached by failing to pay the full value of the

Association's claim.  *See generally* Docket No. 48.

"An insured seeking to enforce a claim under an insurance policy must have an

insurable interest in the damaged property."  *Omni Dev. Corp. v. Atlas Assur. Co. of

Am.*, 956 P.2d 665, 669 (Colo. App. 1998) (citing *Imperial Mort. Corp. v. Travelers

Indemnity Co.*, 599 P.2d 276 (Colo. App. 1979)).  An "insurable interest in property" is

"every interest in property or any relation thereto, or liability in respect thereof, of such a

nature that a contemplated peril might directly damnify the insured."  Colo. Rev. Stat.

§ 10-1-102(11).  "Damnify" means "[t]o cause loss or damage to; to injure."  *Damnify*,

Black's Law Dictionary (11th ed. 2019).  "Accordingly, an insurable interest exists where

the insured has such a relationship with the property that it would incur a loss if the

property were harmed by the risk against which it is insured."  *Colo. Hosp. Serv., Inc. v.

Auto-Owners Ins. Co.*, No. 14-cv-01858-WJM-NYW, 2015 WL 6098639, at *2 (D. Colo.

---

[9] The Association does not genuinely dispute that the Declaration defines the legal relationship between owners and the Association.  The Declaration, as described in the undisputed facts, defines, among other things, the "Association," "owners," "lots," and "units," and sets forth the components of the property that owners must repair, maintain, and insure as well as components that the Association's responsibility.  *See* Docket No. 41 at 4–5, ¶¶ 5–9 (citing Docket No. 39-1 at 6–8, 41–42).

Oct. 16, 2015) (citing *Bird v. Cent. Mfrs. Mut. Ins. Co.*, 120 P.2d 753, 755 (Or. 1942)).

As an initial matter, the Court notes that the undisputed facts establish that defendant paid the Association "for damage to common elements" of the property and elements enumerated in the Declaration as being the Association's responsibility to repair, maintain, and insure. Docket No. 41 at 6, ¶ 16. The Court also notes that, although there is no disagreement that the disputed property is owned by unit or lot owners, as defined in the Declaration, *see id.* at 4, ¶¶ 5–6, rather than by the Association itself, the question of ownership is not dispositive to insurable interest. That is because "[a]n insurable interest is not dependent upon the completeness or the validity of the title by which the property is held; a limited or qualified interest is enough." *Webb v. M.F.A. Mut. Ins. Co.*, 620 P.2d 38, 39 (Colo. App. 1980) (citing *Helvetia Swiss Fire Ins. Co. v. Edward P. Allis Co.*, 53 P. 242 (Colo. App. 1898)). Ownership is not dispositive because an insured has an insurable interest where the insured "would incur a loss if the property were harmed by the risk against which it is insured." *Colo. Hosp. Serv.*, 2015 WL 6098639, at \*2. Thus, the Court cannot determine whether the Association has an insurable interest in the disputed property – and therefore whether the Association may seek to "enforce a claim under an insurance policy," *see Omni Dev. Corp.*, 956 P.2d at 669 – solely by looking to who owns the disputed property. The Court instead looks to whether the Association has an insurable interest in the disputed property pursuant to the Declaration or Colorado law.

The undisputed facts show that the Declaration distinguishes between the maintenance and insurance obligations of the Association as the association and those obligations of townhome owners. Docket No. 41 at 4–5, ¶¶ 8–9. The Declaration states

that owners must maintain and insure, as relevant here, window screens, interior glass surfaces, window glass and frame, garage doors, exterior unit doors, storm doors, balcony/patio doors, air conditioners, including condensers and lines. *Id.* (citing Docket No. 39-1 at 41–45). Pursuant to the Declaration, therefore, maintenance and insurance for all of the disputed property are obligations of owners, not the Association. This indicates that, because the Association has no maintenance or insurance obligation for the disputed property, the Association would not incur a loss if the disputed property were harmed and thus has no insurable interest in the disputed property. *See Colo. Hosp. Serv.*, 2015 WL 6098639, at *2.

The Association notes that the Declaration provides that the Association "may, in its sole discretion, assume the obligation for maintenance or repair of additional property, either real or personal, which lies within or outside the Community. The Association shall have the right to assume such obligation even if the obligation currently lies with Owners or other entities." Docket No. 48 at 6, ¶ 4 (quoting Docket No. 39-1 at 12). The Declaration further provides that, if an owner fails to comply with its maintenance and repair obligations, the Association may maintain and repair the property and assess the costs to the owner through a lien. *Id.*, ¶ 5 (quoting Docket No. 39-1 at 12). This discretion, however, does not create an insurable interest in the disputed property for the Association. First, the Association's assumption of maintenance and repair obligations for property that would otherwise be an owner's obligation to maintain and repair is discretionary, and the Association has not shown how a discretionary undertaking could constitute a "relationship with the property" through which the Association "would incur a loss if the property were harmed," *see*

11

*Colo. Hosp. Serv.*, 2015 WL 6098639, at \*2, where, as here, there are no facts, disputed or otherwise, indicating that the Association has exercised its discretion to assume maintenance and repair obligations for any of the disputed property.  Second, the Association's ability to assess costs back to owners in these circumstances indicates that the Association would not "incur a loss" at all.  *See id.*  Therefore, although the Association may be correct that the Declaration "grants [the Association] irrefutable authority to bear the financial burden of performing maintenance on the units, to assume any obligations, financial or otherwise, for said maintenance, and to assume repair obligations even when those obligations may rest with [unit owners]," *see* Docket No. 48 at 10, such unexercised authority is irrelevant to the question of whether the Association has an insured interest in the disputed property.  There is no genuine dispute of material fact that the Declaration does not provide the Association with an insurable interest in the disputed property.

The Association also relies on the policy itself.  The Association characterizes defendant as asserting that the policy "does not cover the [b]uilding [c]omponents," which, the Association claims, is inconsistent with the policy itself, since the policy covers "all fixtures outside individual units subject to exclusions."  *Id.* at 8 (quoting Docket No. 39-2 at 52).  Although the Association is correct that the policy covers fixtures outside of individual units, including outdoor fixtures, and does not specifically exclude coverage for windows, window screens, entry doors, sliding doors, garage doors, or air conditioning condensers, Docket No. 39 at 5, ¶ 5, the policy also states that coverage is limited to that property in which the Association has a financial interest.

*See* Docket No. 41 at 5, ¶¶ 12–13 (quoting Docket No. 39-1 at 13, 40 ("[v]arious

12

provisions in th[e] policy restrict coverage," and defendant "will not pay [the insured] more than [the insured's] financial interest" in the property).  Read together, the policy covers, in relevant part, outside fixtures, but only those in which the Association has a financial interest.  However, because there are no facts indicating that the Association (as opposed to unit owners) owns the disputed property or has assumed maintenance, repair, or insurance obligations over the disputed property, there are no facts establishing that the Association has a financial interest in any of the disputed property.  Even if the policy covered the disputed property, an insurance policy cannot itself create an insurable interest.  Rather, insurance is a contract to indemnify the policyholder for a certain amount of liability "upon determinable risk contingencies."  Colo. Rev. Stat. § 10-1-102(12).  Thus, the insurance indemnifies the policyholder in the event that a "contemplated peril . . . directly damnif[ies] the insured."  *Id.* § 10-1-102(11).  The policy presupposes the insurable interest.

Finally, the Association argues that its insurable interest "is clear and is derived from [the Association's] obligations under the CCIOA."  Docket No. 48 at 10–11.  The Association cites Colo. Rev. Stat. §§ 38-33.3-313(1), (2).  *Id.*  That section of the CCIOA states, in relevant part, that the

> (1) . . . association shall maintain . . .
>
>> (a) Property insurance on the common elements and, in a planned community, also on property that must become common elements, for broad form covered causes of loss. . . .
>>
>> (b) Commercial general liability insurance against claims and liabilities arising in connection with the ownership, existence, use, or management of the common elements, and, in cooperatives, also of all units, in an amount, if any, specified by the common interest community instruments or otherwise deemed sufficient . . . .

13

> (2) In the case of a building that is part of a cooperative or that contains units having horizontal boundaries described in the declaration, the insurance maintained under paragraph (a) of subsection (1) of this section must include the units but not the finished interior surfaces of the walls, floors, and ceilings of the units. . . . .

Colo. Rev. Stat. §§ 38-33.3-313(1), (2).  The Association does not explain why it believes that this portion of the CCIOA means that the Association "incur[red] a loss" when the disputed property was harmed.  *See Colo. Hosp. Serv.*, 2015 WL 6098639, at *2.  The policy indicates that the Association complied with § (1)(a) by maintaining insurance on the common elements, but, given that the disputed property is not comprised of common elements, it is not clear how § (1)(a) creates an insurable interest in the disputed property.  Moreover, the Association does not explain why § (1)(b) is relevant to this dispute, as there are no facts regarding claims or liabilities arising in connection with ownership, existence, use, or management of common elements. Finally, § (2) does not apply to this dispute.  That section applies to buildings that are cooperatives or have horizontal boundaries between units.  The property here is a "planned community," *see* Docket No. 39 at 3, ¶ 1, which is defined as a "common interest community that is not a condominium or cooperative."  Colo. Rev. Stat. § 38-33.3-103(22).  Moreover, according to the Declaration, as recounted in the undisputed facts, the property does not contain any "horizontal boundary."  *See* Docket No. 41 at 5, ¶ 10.  A horizontal boundary, which exist between units in a condominium buildings, is a "plane of elevation relative to a described bench mark that defines either a lower or an upper dimension of a unit such that the real estate respectively below or above the defined plane is not a part of the unit."  Colo. Rev. Stat. § 38-33.3-103(16.5).  The property here consists of townhomes with vertical boundaries.   Docket No. 41 at 4, ¶ 4.

Therefore, the Association does not have an insurable interest in the disputed property that derives from the CCIOA.

The Association has failed to raise a genuine dispute of material fact regarding its lack of insurable interest in the disputed property.  The Association, therefore, has not shown that it may seek to "enforce a claim under [the] insurance policy."  *See Omni Dev. Corp.*, 956 P.2d at 669.  Because the Association has not shown that it has an insurable interest in the disputed property, it has not shown that it may enforce this claim under the policy or that defendant had an obligation to render payment for the damage to the disputed property.  The Association, therefore, has not shown that defendant breached the policy by failing to pay the portion of the Association's claim for the disputed property.  *See Diodosio*, 841 P.2d at 1058.  Accordingly, the Court will grant defendant's motion, dismiss the Association's breach-of-contract claim, and deny the Association's partial motion for summary judgment on its declaratory judgment and breach-of-contract claim.  *See generally* Docket No. 39.

### B.  Additional Claims

Defendant seeks summary judgment on the Association's other claims, *see* Docket No. 41 at 15, which are for breach of the covenant of good faith and fair dealing, statutory bad faith, and unfair and deceptive trade practices.  Docket No. 1 at 7–10, ¶¶ 45–63.  The Court does not reach these arguments because defendant provides no argument on the merits of these claims, and the Court has determined that defendant's denial of coverage was proper as a matter of law.  *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192–93 (10th Cir. 2009) ("Having concluded that

the insurance companies' denial of coverage was proper as a matter of law, we must

also affirm the district court's grant of summary judgment in their favor on [the

Association's] bad faith claim.  It is settled law in Colorado that a bad faith claim must

fail if, as is the case here, coverage was properly denied and the Association's only

claimed damages flowed from the denial of coverage.") (citing *Tynan's Nissan, Inc. v.*

*Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 326 (Colo. App. 1995); *M.L. Foss, Inc. v.*

*Liberty Mut. Ins. Co.*, 885 P.2d 284, 286 (Colo. App. 1994), *overruled on other grounds*

*by Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294 (Colo. 2003); *Jarnagin*

*v. Banker's Life and Cas. Co.*, 824 P.2d 11, 15 (Colo. App. 1991)).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Docket No. 39]

is **DENIED**.  It is further

**ORDERED** that Travelers' Motion for Summary Judgment on Plaintiff's

Complaint and Travelers' Counterclaim for Declaratory Judgment [Docket No. 41] is

**GRANTED**.  It is further

**ORDERED** that this case is closed.

DATED: March 25, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge